# In the United States Court of Federal Claims

No. 14-147C
(Filed: March 20, 2015)
(Not for Publication)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| PROBIR K. BONDYOPADHYAY, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**FILED**

MAR 20 2015

U.S. COURT OF
FEDERAL CLAIMS

---

## OPINION AND ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

---

This patent infringement case comes before the Court on Defendant's partial motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Defendant seeks dismissal on the grounds that one segment of Plaintiff's claim is time-barred and another arose after expiration of the patent-in-suit. Defendant also seeks dismissal of Plaintiff's claims for a Fifth Amendment taking, punitive damages, and costs arising out of other litigation. Defendant's motion is **GRANTED**.

### Background[1]

Plaintiff Probir Bondyopadhyay is the named inventor of United States Patent No. 6,292,134 ("the '134 Patent"), entitled "Geodesic sphere phased array antenna system." The '134 Patent issued on September 18, 2001, and generally covers:

> A geodesic sphere phased array antenna system, capable of scanning the entire omni-directional communication space and comprising substantially equilateral triangular planar subarrays of antenna elements arranged in a geodesic sphere configuration. Icosahedron, one of the five regular solids and truncated icosahedron, one of the fifteen semi-regular solids are the preferred basis of the geodesic sphere phased array construction. The entire

---

[1] Findings of fact relating to jurisdiction are in the Discussion.

> communication space is considered as subdivided into a large number of smaller cells and corresponding to each such cellular communication space, a contiguous set of the subarrays is energized and electronically phased to scan the cellular space. Another contiguous set of subarrays is energized and electronically phased to scan another cellular space in a similar manner resulting in limited angle scanning requirements which permit the basic antenna elements to be connected in a cluster as a unit building block to which transmit/receive signal distribution and processing means are connected resulting in lower costs in deployment, operation and maintenance.

'134 Patent Abstract.

Plaintiff describes the invention as "a very large, electronically scanned, radar system." Compl. ¶ 18. The '134 Patent expired on September 18, 2009, for failure to pay maintenance fees, according to the Patent Fee Data for the '134 Patent retrieved from the USPTO Public Patent Application Retrieval system and a Notice of Patent Expiration for the '134 Patent included in the patent's file history. Mot. to Dismiss, Jou Decl., Exs. 3, 4. Plaintiff disputes that the patent has expired, and claims that it is simply in "sleep mode," but has not provided evidence to rebut the evidence of expiration. Second Resp. ¶ 8.4.1.

Plaintiff alleges that the United States Department of the Air Force is currently engaged in developing and manufacturing his radar system invention for public use. Compl. ¶ 4. He claims that

> [i]ntellectual property thieves at the U.S. Air Force Research Laboratory that administers the Small Business Innovation Research (SBIR) Program of the U.S. Air Force acquired this said invention through a procurement fraud. This Plaintiff submitted this said invention for research and development funding under the US Air Force SBIR Phase-I solicitation AF-99-244.

Id. ¶ 11.

Plaintiff has pursued infringement claims through both administrative and judicial channels. On June 17, 2002, Plaintiff filed a "formal notification of Administrative Claim for infringement" of the '134 Patent with the Air Force. In his administrative claim, Plaintiff cited five contracts as infringing on the '134 Patent: AFRL Contract No. F19628-99-C-0073, completed Jul. 12, 2000; AFRL Contract No. F19628-00-C-0048, completed Mar. 20, 2001; AFRL Contract No. F19628-00-C-0053, completed Mar. 30, 2001; AFRL Contract No. F19628-01-C-0029, set to be completed by April 19, 2003; and AFRL Contract No. F19628-01-C-0038, set to be completed by April 9, 2003. Mot. to Dismiss, Chiang Decl., Ex. 1, 2. On July 30, 2002, Air Force Colonel Francis J. Lamir sent Plaintiff a letter denying his claim for compensation for the alleged infringement of his patent by these contracts. Mot. to Dismiss, Chiang Decl., Ex. 2.

Plaintiff alleges that

> "[t]his Claim has three parts. The first or the main part arises out of Title 28 US Code, Section 1498(a). The second part arises out of Title 35 US Code Section 284 under special circumstances described below. The third part covers the Court costs of the plaintiff in pursuing this case as is further detailed below."

Compl. ¶ 17. Plaintiff alleges that his claim "covers the fourteen year time span" from July 1, 1999 to June 30, 2013, and further alleges:

> This financial claim first accrued formally on 1st July 2009 with a finite amount calculated from 1st July 1999 when under the said U.S. Constitutional Provision of Article I, Section 8, Clause -8, this Plaintiff inventor would have begun developing this said invention as a Small Business Innovation Research (SBIR) entity under the 'exclusive Right' guaranteed by the U.S. Constitution.

Id. ¶¶ 12-13 (emphasis omitted).

Plaintiff seeks "JUST COMPENSATION for public use of the Plaintiff's invention." Id. ¶ 16. Plaintiff claims that he is entitled to the monetary value of the property taken and claims that he would have earned:

> [A] total of $900,000 in the first three years ($100,000 from SBIR Phase-I, $750,000 from the SBIR Phase-II second year and the third year combined and $50,000 during the gap period between SBIR Phase-I and Phase-II[)]. The average yearly Claim is therefore $300,000 during the first three years (1st July 1999 through 30th June 2002) that would have been earned by this plaintiff under Article I, Section 8, Clause 8, of the U.S. Constitution under the *'exclusive Right'* provision.

Id. ¶ 19 (emphasis in original). Plaintiff seeks $300,000 per year from July 1999 to June 2013, plus interest, totaling $5,088,147. Id. ¶ 23.

In addition, Plaintiff seeks punitive damages of $1 million on the grounds that the Air Force intentionally misled the Secretary of Defense by identifying false inventors and caused Plaintiff prolonged financial hardship. Id. ¶¶ 24-26. Plaintiff also seeks costs he incurred in four district court cases that he alleges are "directly related" to the present case. Id. ¶ 29. He seeks "no less than $6,000 including filing fees, all preparation costs, office costs, transportation cost and interest." Id. ¶ 30.

Plaintiff's calculation of just compensation is $6,094,147. Id. ¶ 31.

## Discussion

### Standards for Dismissal

When adjudicating a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court assumes all factual allegations in the complaint to be true and construes "all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). The plaintiff bears the burden of establishing subject-matter jurisdiction by a

preponderance of the evidence. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Naskar v. United States, 82 Fed. Cl. 319, 320 (2008); Bearing Point, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007). When jurisdiction is in dispute, the plaintiff must present "competent proof" to demonstrate that the Court has jurisdiction. McNutt, 298 U.S. at 158. Under these circumstances, the Court may consider relevant evidence to resolve the factual dispute. Reynolds, 846 F.2d at 747; see also Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged."); Schultz v. United States, 92 Fed. Cl. 213, 218 (2010) ("When the movant challenges the truth of jurisdictional facts alleged in the complaint, the court may consider relevant evidence to resolve the factual dispute.").

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine whether a complaint states a plausible claim for relief, a court must engage in a context-specific analysis and "draw on its judicial experience and common sense." Id. at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). However, the plausibility standard requires more than a "sheer possibility" that the defendant has violated the law. Id. (citing Twombly, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**Time-Barred Claims**

Defendant argues that claims for damages prior to January 11, 2008, are barred by the statute of limitations. Section 2501 of Title 28 states that "every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Section 286 of Title 35 tolls this period for the time that a written administrative claim is pending before the relevant Government department or agency:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.
>
> In the case of claims against the United States Government for use of a patented invention, the period before bringing suit, up to six years, between the date of receipt of a written claim for compensation by the department or agency of the Government having authority to settle such a claim, and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall not be counted as part of the period referred to in the preceding paragraph.

4

"The tolling period under 35 U.S.C. § 286 is equal to the shorter of: (i) six years or (ii) the time between the receipt of the claim by the government and the mailing of a notice of denial of the claim by that agency or department." McCreary v. United States, 35 Fed. Cl. 533, 545 (1996).

Whether Plaintiff's claims are within the statute of limitations is a jurisdictional inquiry. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134 (2008) (holding that § 2501 is a jurisdictional statute); Unitrac, LLC v. United States, 113 Fed. Cl. 156, 159 (2013) (holding that the statute of limitations in § 2501 is jurisdictional in the context of a patent infringement action against the Government).

### The Tolling Period Under § 286

Defendant asserts that because Plaintiff filed an administrative claim on June 17, 2002, that was resolved on July 30, 2002, the statute of limitations should have been tolled for the 44 days when this administrative claim was pending. See Custer v. United States, 224 Ct. Cl. 140, 145 (1980) ("35 U.S.C. § 286 extends the time for bringing suit for a period equal to the time an administrative claim was pending before a department or agency of the Government prior to the date of filing the petition."). Plaintiff responds with two arguments: (1) the July 30, 2002 letter was not a final decision and therefore the tolling period did not end on July 30, 2002, and (2) the statute of limitations should have been tolled under § 286 by another claim submitted on May 18, 2004, which was pending until 2013.[2]

Plaintiff states that the July 30, 2002 letter from Colonel Lamir was not a final decision because "[w]ritten authorization from the U.S. Secretary of the Air Force is needed to claim that this was a final denial." Resp. ¶ 11.1.6 (emphasis omitted). Plaintiff's contention is erroneous. The Secretary of the Air Force delegated authority to a component of the Office of the Judge Advocate General of the Air Force to handle activities pertaining to intellectual property law matters including administrative claims—the Air Force Legal Services Agency, Commercial Litigation Division, Intellectual Property Branch. Reply Ex. 1 (Air Force Instruction 51-303, September 1, 1998). Colonel Lamir, the signatory on the July 30, 2002 letter, was the Chief of the Air Force Legal Services Commercial Litigation Division. See Mot. to Dismiss, Chiang Decl., Ex. 2 (July 30, 2002 letter from Colonel Lamir to Plaintiff). Colonel Lamir's letter met the requirement of § 286, as it clearly stated that Plaintiff's claim for infringement of the '134 Patent was denied, and Colonel Lamir was an appropriate delegee. See id. Plaintiff's June 17, 2002 administrative claim was denied by Colonel Lamir's July 30, 2002 letter, and this denial ended the tolling period.

Plaintiff further argues that he filed another administrative claim that should operate under § 286 to toll the statute of limitations:

> A new administrative claim [Exhibit-20(A)] was submitted to the
> U.S. Air Force on May 18, 2004 on which the Air Force reply was
> 'still pending' before July 1, 2013 when the last U.S. District Court

---

[2] Plaintiff also appears to argue that tolling the statute of limitations for 44 days pending resolution of the administrative claim reversed the decision on the administrative claim. Plaintiff's Further Rebuttal to Defendant's Submission ¶ 5.4. The Court rejects this argument. Tolling under § 286 has no impact on the merits of the administrative decision.

> was filed. Acquisition of the innovation by procurement fraud was the main issue in the said latest administrative claim. The difference between this May 18, 2004 claim and the previous claim of June 17, 2002 is that the administrative claim of June 17, 2002 was flown in on a "Boeing 777" to Major General Thomas J. Fiscus, whereas the said later May 18, 2004 claim was flown in on a "Boeing 52" to the said Major General (Exhibit-20A submitted here in). The Generals know the difference.

Second Resp. ¶ 7.2.2 (emphasis omitted, bracketed material in original). Plaintiff's referenced Exhibit 20A reflects that Plaintiff filed a complaint in the United States District Court for the Southern District of Texas on May 18, 2004. This complaint initiated a judicial proceeding, and was not an administrative claim that operated to toll the statute of limitations within the meaning of § 286.

The only claimed period during which the statute of limitations would have been tolled is the 44 days between June 17, 2002, and July 30, 2002. Section 286 "extends the time for bringing suit for a period equal to the time an administrative claim was pending before a department or agency of the Government prior to the date of filing the petition." Custer, 224 Ct. Cl. at 145. The six-year statute of limitations is therefore extended by 44 days in light of Plaintiff's administrative claim, and the time period for any damages award, if proven, would commence on January 11, 2008. Any claims prior to January 11, 2008, are time-barred and dismissed.

**Plaintiff Is Not Entitled to Damages for Alleged Acts of Infringement After the '134 Patent Expired.**

Defendant next asks that the Court dismiss any claims "arising on or after September 18, 2009," because the '134 Patent expired on that date for failure to pay maintenance fees. In support, Defendant attaches to its Motion the Declaration of Alice Suh Jou, Trial Attorney with the Department of Justice, authenticating a copy of the Patent Fee Data for the '134 Patent, retrieved from the USPTO Public Patent Application Retrieval system, and a Notice of Patent Expiration for the '134 Patent included in the patent's file history. Mot. to Dismiss, Jou Decl., Exs. 3, 4. Both documents state that the '134 Patent expired on September 18, 2009, for failure to pay maintenance fees. Id.

Plaintiff neither challenges the accuracy of Defendant's exhibits, nor proffers evidence that the patent is still active. Instead, Plaintiff contends "the question of the patent's expiration should NOT arise" because "Plaintiff had assigned his Patent . . . to the Air Force Space Command which will be using it." Resp. ¶¶ 11.2.1, 11.2.2. If Plaintiff were correct that he had assigned the '134 Patent to the Air Force, he would lack standing to bring this suit. See Iris Corp. Berhad v. United States, 82 Fed. Cl. 488, 495-96 (2008) ("Only the entity or entities that own or control all substantial rights in a patent can enforce rights controlled by that patent, lest an accused infringer be subjected to multiple suits and duplicate liability." (quoting IpVenture, Inc. v. ProStar Computer, Inc., 503 F.3d 1324, 1325 (Fed. Cir. 2007))). However, the Government does not claim that Plaintiff assigned the patent to Air Force Space Command, there is no proof that Plaintiff actually assigned his patent, and Plaintiff asserts that he still owns the patent. As such, the Court rejects Plaintiff's suggestion that the question of patent expiration need not be addressed.

Plaintiff further argues that his patent is "NOT expired (dead) as the Defendant's attorney tries to portray," but is rather "currently in SLEEP MODE." Second Resp. ¶8.4.1. Plaintiff's distinction between "expired" and "sleep mode" does nothing to resuscitate his expired patent. As Defendant's evidence demonstrates, Plaintiff's failure to pay maintenance fees caused the '134 Patent to expire as a matter of law. See 35 U.S.C. § 41(b)(2) (2014) ("Unless payment of the applicable maintenance fee under paragraph (1) is received in the Office on or before the date the fee is due or within a grace period of 6 months thereafter, the patent shall expire as of the end of the grace period.").[3] The '134 Patent has been expired since September 18, 2009. "Because the rights flowing from a patent exist only for the term of the patent, there can be no infringement once the patent expires." Kearns v. Chrysler Corp., 32 F.3d 1541, 1550 (Fed. Cir. 1994). This is true even if the patent expires for failure to pay maintenance fees. See Demodulation, Inc. v. United States, 118 Fed. Cl. 69, 75 (2014).[4] Plaintiff is not entitled to damages for alleged acts of infringement after the expiration of his patent.

### This Court Lacks Jurisdiction over a Patent Infringement Claim Asserted as a Fifth Amendment Taking.

Defendant seeks dismissal of Plaintiff's Fifth Amendment Taking claim. Defendant correctly asserts that a claim for patent infringement against the Government is considered under § 1498 rather than the Fifth Amendment. Demodulation, 118 Fed. Cl. at 73 ("Count IV is dismissed to the extent that Plaintiff attempts to fashion its patent infringement claim as a Fifth Amendment takings claim. A patent infringement claim is a tort claim and therefore is excluded by the Tucker Act's prohibition on 'cases sounding in tort.' The only way to bring a patent infringement claim in this Court is to assert the claim under 28 U.S.C. § 1498(a) . . . ."); Keehn v. United States, 110 Fed. Cl. 306, 355 (2013) ("[P]laintiff's Fifth Amendment takings theory is without merit. It is 28 U.S.C. § 1498(a), not the Fifth Amendment to the United States Constitution, that provides the waiver of sovereign immunity that enables a plaintiff to file suit against the government for patent infringement."). To the extent Plaintiff's claim of patent infringement is brought as a Fifth Amendment taking, the claim is dismissed.

### Plaintiff Is Not Entitled to Punitive Damages Under § 1498.

Defendant seeks to dismiss Plaintiff's claims for punitive damages. Plaintiffs are not entitled to punitive damages in patent infringement suits against the Government. Leesona Corp. v. United States, 220 Ct. Cl. 234, 252 (1979). As the Leesona Court held, a patent holder suing under § 1498 "is not entitled to be the recipient of increased damages heaped on other parties as punishment or deterrence." Id.

### Plaintiff Is Not Entitled to Costs Incurred in Other Litigations.

Defendant argues that Plaintiff is not entitled to costs he allegedly incurred in district court cases for two reasons. First, the costs recoverable under § 1498 are only "costs in this

---

[3]   There is no suggestion in the record that the PTO Director accepted late payment of maintenance fees. See id. § 41(c).

[4]   Although Plaintiff alluded to his bankruptcy, he has not demonstrated that the PTO should have excused his failure to pay the maintenance fee due to his financial circumstances. See Resp. ¶ 11.2.4.

action," and the district court costs were incurred in separate actions. Reply at 6. Second, all of Plaintiff's district court cases were dismissed, and, as he is not the prevailing party, he is not entitled to costs. Mot. to Dismiss 11-12. Defendant is correct. "A judgment for costs when taxed against the United States shall . . . be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation." 28 U.S.C. § 2412 (2014) (emphasis added). Plaintiff's claim for costs incurred in district court actions is dismissed.

**Ad Hominem Attacks**

Plaintiff's papers contain numerous ad hominem attacks against Defendant's declarant Mr. Chiang and Defendant's counsel. Resp. ¶¶ 1, 3.1, 11.1.5, 11.1.6, 11.5.5, 12.5; Second Resp. ¶¶ 1, 3.1, 4.3, 7.2.1, 7.2.9, 7.2.11, 8.4.3, 11.5; Plaintiff's Further Rebuttal to Defendant's Submission ¶¶ 1, 3.1, 3.4, 3.5, 5.6, 6.6. For instance, in his response to Defendant's motion to dismiss, Plaintiff accuses Defendant's counsel of "lack[ing] professional integrity," and of drafting "a deceptive and fraudulent affidavit." Resp. ¶¶ 1, 3.1; see also Second Resp. ¶ 7.2.11. Plaintiff also characterizes a portion of Defendant's factual background as a lie, fabricated by Defendant's counsel, and describes counsel as "definitely lying to this Honorable Court." Resp. ¶¶ 11.1.6, 11.5.5; Second Resp. ¶ 11.5.

Plaintiff's ad hominem attacks against Defendant's declarant and counsel of record are baseless and frivolous. Plaintiff is hereby ordered to cease making personal attacks on Defendant's declarants and counsel. If Plaintiff persists in such conduct, he may be sanctioned. See Rule 11(b), (c).

**Conclusion**

Defendant's partial motion to dismiss is **GRANTED**. Defendant shall file its Answer on or before **April 3, 2015**.[5]

On or before **April 17, 2015**, each party shall file a proposed schedule suggesting calendar dates and times for further proceedings, including any motions or discovery. Any party requesting a trial shall propose the dates and location of trial.

No other filings or discovery are authorized until further order of the Court.

*Mary Ellen Coster Williams*
**MARY ELLEN COSTER WILLIAMS**
Judge

---

[5] Plaintiff's Motion for Hearing and "leave application to file the following motion in response to Defendant's two rule 12(a) and 12(c) motions of September 8, 2014" have been rendered moot by this decision.